01

02

03

04

05

06                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
07                                 AT SEATTLE

08  DANA W. SHINN,                         )   CASE NO. C08-1786-RSL
                                           )
09          Plaintiff,                     )
                                           )
10          v.                             )   REPORT AND RECOMMENDATION
                                           )
11  MICHAEL J. ASTRUE,                     )
    Commissioner of Social Security,       )
12                                         )
            Defendant.                     )
13  _____     )

14          Plaintiff Dana W. Shinn appeals the final decision of the Commissioner of the Social

15  Security Administration ("Commissioner") which denied his applications for Disability

16  Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17  of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18  administrative law judge ("ALJ").   For the reasons set forth below, the Court recommends that

19  the Commissioner's decision be REVERSED and REMANDED for further proceedings.

20                    I.      FACTS AND PROCEDURAL HISTORY

21          Plaintiff is a 32 year old man with a high school education and 3½ years of community

22  college.   Administrative Record ("AR") at 918.   His past work experience includes

REPORT AND RECOMMENDATION
PAGE -1

01 employment as a delivery person, house painter, housekeeper/maintenance assistant in a hotel,

02 and dietary aide in a nursing home.   AR at 921, 926, 928, 945-47.   Plaintiff was last gainfully

03 employed on October 24, 1999.   AR at   23.

04        On October 15, 2002, plaintiff filed applications for DIB and SSI payments.   AR at

05 20, 76-78, 657-59.   Plaintiff asserts that he is disabled due to an Affective Disorder.   Dkt. No.

06 14 at 2.

07        The Commissioner denied plaintiff's claim initially and on reconsideration.   AR at 20.

08 Plaintiff requested a hearing which took place on April 18, 2005.   AR at 51, 876-911.   On July

09 27, 2005, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on

10 his finding that plaintiff could return to his past job as a laundry worker.   AR at 20.   On

11 September 26, 2006, the Appeals Council reversed and remanded for additional administrative

12 proceedings to evaluate new medical and examining source evidence, and to determine whether

13 plaintiff has any past relevant work.   AR at 20, 682-85.

14        The ALJ held another hearing on January 3, 2007.   AR 912-69.   On May 14, 2007, the

15 ALJ issued a decision finding plaintiff not disabled within the meaning of the Act from October

16 24, 1999, through the date of the decision.   AR 20-31.   On October 29, 2008, the Appeals

17 Council denied plaintiff's request for review, making the ALJ's ruling the "final decision" of

18 the Commissioner as that term is defined by 42 U.S.C. § 405(g).   On December 12, 2008,

19 plaintiff timely filed the present action challenging the Commissioner's decision.   Dkt. No. 3.

20                                II.        JURISDICTION

21        Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

22 405(g) and 1383(c)(3).

REPORT AND RECOMMENDATION
PAGE -2

# III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.   *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).   "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).   The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.   *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).   While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).   When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."   *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).   The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; see also *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

01 erroneously rejected evidence may be credited when all three elements are met).

02 <center>IV.    DISCUSSION</center>

03     The Commissioner follows a five-step sequential evaluation process for determining

04 whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520, 416.920 (2000).   At step one, it

05 must be determined whether the claimant is gainfully employed.   The ALJ found plaintiff has

06 not engaged in substantial gainful activity since the alleged onset date.   AR 23.   At step two, it

07 must be determined whether a claimant suffers from a severe impairment.   The ALJ found

08 plaintiff has the following severe impairments: affective disorder and substance abuse disorder.

09 AR 23.   Step three asks whether a claimant's impairments meet or equal a listed impairment.

10 The ALJ found that plaintiff did not have an impairment or combination of impairments that

11 meet or equal a listed impairment.   AR 24.   If a claimant's impairments do not meet or equal a

12 listing, the Commissioner must assess residual functional capacity ("RFC") and determine at

13 step four whether the claimant has demonstrated an inability to perform past relevant work.

14 The ALJ found that plaintiff has the RFC to perform all levels of physical activity and can

15 adequately perform the mental activities generally required by competitive, remunerative,

16 unskilled work.   AR 24.   "He can understand, remember, and carry out simple instructions;

17 make judgments commensurate with the functions of unskilled work, i.e., simple work-related

18 decisions; respond appropriately to supervisors, coworkers, and usual work situations; and can

19 deal with changes in a routine work setting."   AR 24.   The ALJ found that plaintiff has no past

20 relevant work.   AR 29.   If the claimant is able to perform his past relevant work, he is not

21 disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show

22 that the claimant can perform other work that exists in significant numbers in the national

01  economy, taking into consideration the claimant's RFC, age, education, and work experience.

02  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d 1094, 1099-1100 (9th Cir. 1999).

03  The ALJ found that plaintiff is capable of making a successful adjustment to other work that

04  exists in significant numbers in the national economy, such as fast food worker, flagger, and

05  housecleaner.   AR 30.   Accordingly, the ALJ concluded that plaintiff is not disabled.   AR

06  30-31.

07       This Court's review of the ALJ's decision is limited to whether the decision is in

08  accordance with the law and the findings supported by substantial evidence in the record as a

09  whole.   *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

10  more than a scintilla, but less than a preponderance; it means such relevant evidence as a

11  reasonable mind might accept as adequate to support a conclusion.   *Magallanes*, 881 F.2d at

12  750.   If there is more than one rational interpretation, one of which supports the ALJ's

13  decision, the Court must uphold that decision.   *Thomas*, 278 F.3d at 954.

14       Plaintiff argues that the ALJ erred in (1) evaluating lay witnesses statements; (2)

15  evaluating the medical evidence; (3) evaluating plaintiff's RFC; and (4) finding at step five that

16  plaintiff is capable of adjusting to other work that exists in significant numbers in the national

17  economy.   Dkt. 20.   He requests remand for an award of benefits or, alternatively, for further

18  administrative proceedings.   The Commissioner argues that the ALJ's decision is supported by

19  substantial evidence and should be affirmed.   For the reasons described below, the Court

20  agrees with the plaintiff.

21       A.      Lay Witness Statements

22       "In determining whether a claimant is disabled, an ALJ must consider lay witness

01 testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053

02 (9th Cir. 2006).   Lay witness testimony as to a claimant's symptoms or how an impairment

03 affects ability to work is competent evidence, 20 C.F.R. § 404.1513(e), *Sprague v. Bowen*, 812

04 F.2d 1226, 1232 (9th Cir.1987), and therefore cannot be disregarded without comment.

05 *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).   If an ALJ wishes to discount the

06 testimony of a lay witness, he must provide reasons germane to each witness and may not

07 simply categorically discredit the testimony.   *Id.* at 919.

08        Plaintiff contends that the ALJ failed to properly consider written statements submitted

09 by his mother, father, and girlfriend, regarding the nature and extent of his impairments.   Dkt.

10 No. 14 at 13-14.   For example, plaintiff's mother indicates that plaintiff's symptoms come and

11 go, and that plaintiff is sometimes sick twice a month for two to four days.   AR 138.   In

12 addition, plaintiff's mother states that his "medication does help the severity of his attacks, but

13 does not make them go away."   *Id.*   Plaintiff's father and girlfriend also indicate that the

14 unpredictability of his impairments greatly impact his functional abilities.   AR 146-50, 175.

15 Plaintiff claims that "[t]he witnesses' observations are largely consistent with the medical

16 evidence and plaintiff's testimony and effectively rejecting such evidence is clearly not

17 'harmless error' when they negate the ability to perform consistent full-time work."   Dkt. No.

18 14 at 14.

19        The ALJ stated, "The lay witness statements of record basically indicate that the

20 claimant's functional abilities fluctuate with his mood."   AR at 26.   The ALJ assigned these

21 statements "some weight, but only to the extent that they support the findings established in this

22 decision."   *Id.*   The ALJ's decision provides no basis to determine what was accepted and

01 what was rejected. The statement in his decision, thus, provides no effective basis for judicial

02 review.

03        The Commissioner argues that "[t]he ALJ's findings were predicated on the record,

04 which he found established that Plaintiff was not entirely credible; therefore, testimony of

05 Plaintiff's family and friends was fraught with the same credibility problem." (Dkt. 17 at 9).

06 The Commissioner further argues that "because Plaintiff did not comply with prescribed

07 treatment of psychotherapy and medication, the fluctuation in his abilities to function was in

08 question." *Id.* Although inconsistencies with the evidence of record may be a reason to reject

09 lay testimony, the ALJ did not identify any specific inconsistencies between the witness

10 statements and the record. Moreover, an ALJ cannot reject lay testimony simply by rejecting

11 the credibility of the claimant. *See Dodrill*, 12 F.3d at 918-19 (holding that lay witnesses are

12 competent to make independent observations of a claimant's symptoms and daily activities, and

13 to testify as to her condition). The Commissioner's post hoc explanation is insufficient to cure

14 the ALJ's error. *See, e.g., Ceguerra v. Sec'y of Health & Human Serv.*, 933 F.2d 735, 738 (9th

15 Cir. 1991)("A reviewing court can evaluate an agency's decision only on the grounds

16 articulated by the agency."). If the ALJ wishes to discount the testimony of lay witnesses, the

17 ALJ, not the Commissioner, must provide specific reasons that are germane to each witness.

18 *Dodrill*, 12 F.3d at 919.

19        If an ALJ fails to adequately address lay testimony favorable to the claimant, "a

20 reviewing court cannot consider the error harmless unless it can confidently conclude that no

21 reasonable ALJ, when fully crediting the testimony, could have reached a different disability

22 determination." *Stout*, 454 F.3d at 1056. Here, the Court cannot so conclude. Crediting the

REPORT AND RECOMMENDATION
PAGE -7

01  lay witness testimony in this case negates plaintiff's ability to perform full-time employment.

02  The vocational expert specifically opined that missing work more frequently than once or twice

03  a month due to frequent flare-up of symptoms would preclude full-time work.   AR 959.

04  Accordingly, the ALJ's error is not harmless.   *See Stout*, 454 F.3d at 1056.   On remand, the

05  ALJ will review the lay witness testimony in light of the record and specifically identify those

06  parts he accepts and those parts that he rejects.

07          B.       Medical Opinion

08          As a matter of law, more weight is given to a treating physician's opinion than to that of

09  a non-treating physician because a treating physician "is employed to cure and has a greater

10  opportunity to know and observe the patient as an individual."   *Magallanes*, 881 F.2d at 751;

11  20 C.F.R. § 404.1527(d)(1)-(2).   "Likewise, greater weight is accorded to the opinion of an

12  examining physician than a non examining physician."   *Andrews*, 53 F.3d at 1041.   However,

13  under certain circumstances, a treating or examining physician's opinion can be rejected,

14  whether or not that opinion is contradicted by other medical evidence of record.   *Magallanes*,

15  881 F.2d at 751.   An ALJ must give clear and convincing reasons for rejecting a treating or

16  examining physician's opinion if that opinion is not contradicted by other evidence, and

17  specific and legitimate reasons if it is.   *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

18  "This can be done by setting out a detailed and thorough summary of the facts and conflicting

19  clinical evidence, stating his interpretation thereof, and making findings."   *Id.* (citing

20  *Magallanes*, 881 F.2d at 751).   The ALJ must do more than merely state his conclusions.   "He

21  must set forth his own interpretations and explain why they, rather than the doctors', are

22  correct."   *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).   Such

01 conclusions must at all times be supported by substantial evidence.   *Id.*

02     1. *Dr. Schimmel*

03     Plaintiff asserts that the ALJ improperly rejected the opinion of examining psychologist

04 Don Schimmel, Ph.D., AR 249-57, 819-25, 859-64, regarding plaintiff's functional limitations

05 without a "specific and legitimate" basis.   Dkt. 14 at 15-16.   In 2006, Dr. Schimmel

06 completed a Department of Social and Health Services' ("DSHS") Psychological/Psychiatric

07 Evaluation, which rated plaintiff with moderate to severe functional limitations.   AR 819-24.

08 Specifically, Dr. Schimmel opined that plaintiff had "moderate" limitations in his ability to

09 perform routine tasks and to care for himself, including personal hygiene and appearance;

10 "marked" limitations in his ability to learn new tasks; and "severe" limitations in his ability to

11 understand, remember and follow complex instructions, to exercise judgment and make

12 decisions, to relate appropriately to co-workers and supervisors, and to respond appropriately to

13 and tolerate the pressure and expectations of a normal work setting.   AR 821.

14     The ALJ rejected Dr. Schimmel's opinion, stating:

15     The doctor reported that the claimant's bipolar disorder was in partial remission
with a number of his symptoms being controlled on medication.   However, the
16     claimant historically went off his medications when manic.   I note that the
functional limitations are based on the claimant's self-report at the time of the
17     interview [AR 821].   However, the doctor's recommendation that the claimant
participate in vocational rehabilitation [AR 822] is not consistent with the level
18     of limitations he reported on the DSHS assessment form.   Therefore, I have
given his opinion no significant probative weight and accorded greater weight to
19     other examining psychologists of record.

20 AR 28.

21     The ALJ provided specific and legitimate reasons for rejecting Dr. Schimmel's opinion.

22 First, the ALJ noted that plaintiff's bipolar disorder was in partial remission and that a number

01  of his symptoms were being controlled on medication, although he historically goes off his

02  medication.   AR 28.   Second, the ALJ found that the functional limitations set forth in Dr.

03  Schimmel's evaluation were based on plaintiff's self-reported symptoms.   "A physician's

04  opinion of disability 'premised to a large extent upon the claimant's own accounts of his

05  symptoms and limitations' may be disregarded where those complaints have been 'properly

06  discounted.'"   *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir.

07  1999)(quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)).   Here, the ALJ properly

08  found plaintiff not entirely credible and plaintiff made no objection to the ALJ's decision.   AR

09  26-29.   Third, the ALJ found that Dr. Schimmel's opinion regarding the level of plaintiff's

10  functional limitations provided on the DSHS evaluation form was inconsistent with his

11  recommendation that plaintiff participate in vocational rehabilitation.   AR 28.

12          Plaintiff relies on *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978), to argue that "a

13  willingness to engage in rehabilitative activity and release by one's doctor to engage in such an

14  attempt is clearly not probative of a present ability to in fact engage in this activity."   Dkt. 14 at

15  15, Dkt. 18 at 4.   In *Cox*, the ALJ improperly relied on a treating doctor's referral to vocational

16  rehabilitation as proof of the claimant's present ability to work.   *Cox*, 587 F.2d at 991.   Unlike

17  *Cox*, however, the ALJ here did not base his disability finding on Dr. Schimmel's

18  recommendation that plaintiff engage in vocation rehabilitation.   Rather, the ALJ merely

19  found that Dr. Schimmel's recommendation that plaintiff engage in vocational rehabilitation

20  was inconsistent with the level of limitations he reported on the DSHS assessment form.   The

21  ALJ thus gave Dr. Schimmel's opinion no significant probative weight but accorded greater

22  weight to other examining psychologists of record.   AR 28.   The Court agrees with the

01 Commissioner that there was no legal error.

02      2. *Dr. Morris*

03      The plaintiff also argues that the ALJ failed to provide specific and legitimate reasons

04 for rejecting the opinion of examining psychologist Kevin Morris, Psy.D., AR 245-48, 386-91,

05 865-75. Dkt. 14 at 15. In February 2000 and March 2003, Dr. Morris completed DSHS

06 Psychological/Psychiatric Evaluations, which rated plaintiff with moderate to severe functional

07 limitations. AR 245-48, 386-91, 866-75. Plaintiff contends that the ALJ ignored Dr.

08 Morris's opinions without analysis, stating only, "Other opinion evidence of record has also

09 been considered as set out in the prior decision." AR 28, 678. The ALJ noted in his prior

10 decision that Dr. Morris opined in March 2003 that "mental health treatment would likely

11 improve or restore the claimant's ability to work for pay, given the efficacy of treatment thus

12 far." AR 678. The ALJ also noted that Dr. Morris questioned plaintiff's medication

13 compliance and felt that plaintiff's continued marijuana abuse could be exacerbating his

14 psychiatric symptoms. *Id.*

15      The Commissioner concedes that the ALJ failed to articulate the weight given to Dr.

16 Morris's medical opinions, but argues that such error was harmless because the ALJ's decision

17 remains legally valid despite the error. Dkt. 17 at 11-12. The Commissioner contends that

18 "the functional limitations set forth by Dr. Morris were based on Plaintiff's condition due to

19 noncompliance with the prescribed medication and cannabis use." Dkt. 17 at 12. The Court

20 disagrees with the Commissioner that the ALJ's error was harmless.

21      The ALJ's prior decision was vacated, and upon remand the ALJ was specifically

22 ordered to evaluate examining source opinions pursuant to 20 C.F.R. § 404.1527, and to explain

01 the weight given to such opinion evidence, including Dr. Morris's opinion.   AR 684.

02 Contrary to the Commissioner's contention, Dr. Morris's 2003 evaluation indicates that there is

03 "(?) possibly" drug abuse, but that plaintiff's conditions are not caused by past or present drug

04 abuse.   AR 387.   In addition, when asked whether "mental health intervention [is] likely to

05 restore or substantially improve the individual's ability to work for pay in a regular and

06 predictable manner,"   Dr. Morris wrote, "[q]uite possibly, given efficacy of tx."   AR 389.

07 This does not support the Commissioner's conclusion that plaintiff "could recover the ability to

08 work if he complied with his regimen."   Dkt. 17 at 12.

09           It was erroneous for the ALJ to simply ignore the doctor's opinion without mention.

10 On remand, the ALJ should properly evaluate Dr. Morris's opinions.

11           2.  *Ms. Smith*

12           Plaintiff maintains that the ALJ erred in rejecting functional limitations identified by

13 mental health counselor Christine Smith, M.A., AR 444-49.   Dkt. 14 at 15.   Plaintiff contends

14 that the moderate limitations identified by Ms. Smith support the limitations identified by Drs.

15 Schimmel and Morris, and should have been considered.   Id.

16           On March 23, 2005, Ms. Smith filled out a mental impairment assessment form

17 indicating that plaintiff had moderate limitations[1] in the areas of sustaining an ordinary routine

18 without special supervision, performing activities within a schedule, interacting with the public,

19 and asking simple questions.   AR 444-449.   Ms. Smith left blank 12 of the 26 boxes,

20 explaining in the "Comment" section that "[i]n my capacity as a mental health counselor, I have

---

21           1 "Moderately limited" is defined as "[a]n impairment which seriously interferes with, and in
combination with one or more other restrictions assessed, may preclude the individual's ability to perform the
22 designated activity on a regular and sustained basis, i.e., 8 hours a day, for 5 days a week, or an equivalent work
scheduled." AR 444.

01 | not had occasion to observe anything that would provide me with the necessary data to respond

02 | to work related questions."   AR 447.

03 |      The ALJ rejected Ms. Smith's opinion, stating:

04 |     In May 2005, Christine Smith, M.A., filled out a mental impairment assessment
   |      form and indicated that due to bipolar, not otherwise specified, the claimant
05 |     would have some moderate limitations in certain factors pertaining to sustained
   |      concentration and persistence, social interaction, and adaptation.   Under the
06 |     comments section of this form Ms. Smith stated, "In my capacity as a mental
   |      health counselor, I have not had the occasion to observe anything that would
07 |     provide me with the necessary data to respond to work related questions." . . . In
   |      light of Ms. Smith's comment, it appears that she relied on the claimant's
08 |     self-reports when she completed this form.   Nevertheless, the level of
   |      limitations she noted does not substantiate limitations beyond the findings
09 |     established in this decision.   Furthermore, Ms. Smith is not a licensed
   |      psychiatrist or a licensed psychologist and thus is not considered an acceptable
10 |     medical source within the meaning of the regulations . . . Ms. Smith's opinions
   |      are considered as lay witness statements and have been accorded the appropriate
11 |     weight pursuant to SSR 06-03p.   Greater probative weight was accorded the
   |      opinions of the examining psychiatrists in regard to the claimant's functional
12 |     capacity, as noted in the previous paragraphs.

13 | AR 28.

14 |      In order to determine whether a claimant is disabled, an ALJ may consider lay-witness

15 | sources, such as testimony by nurse-practitioners, physicians' assistants, and counselors.   20

16 | C.F.R. § 404.1513(d).   Such testimony regarding a claimant's symptoms or how an

17 | impairment affects his ability to work is competent evidence and cannot be disregarded without

18 | comment.  *Dodrill*, 12 F.3d at 918-19.   This is particularly true for "non-medical" sources

19 | such as nurses and counselors.  *See* SSR 06-03p (noting that because such persons "have

20 | increasingly assumed a greater percentage of the treatment and evaluation functions previously

21 | handled primarily by physicians and psychologists," their opinions "should be evaluated on key

22 | issues such as impairment severity and functional effects, along with the other relevant

01  evidence in the file."). If an ALJ chooses to discount testimony of a lay witness, he must

02  provide "reasons that are germane to each witness," and may not simply categorically discredit

03  the testimony. *Id.* at 919.

04      Here, the ALJ properly considered the opinion of mental health counselor Ms. Smith.

05  First, the ALJ noted that Ms. Smith relied on plaintiff's self-reports, and the ALJ properly

06  found that plaintiff was not entirely credible. AR 23. *See* Morgan, 169 F.3d at 602 (holding

07  that a physician's opinion on disability premised on a claimant's own accounts of his symptoms

08  and limitations may be disregarded where those complaints have been properly discounted).

09  Second, the ALJ noted that the level of limitations identified by Ms. Smith did not substantiate

10  limitations beyond the ALJ's findings. *Id.* Third, the ALJ stated that Ms. Smith was a lay

11  witness and not an acceptable medical source, and was therefore accorded less weight pursuant

12  to SSR 06-03p. *Id.* And fourth, the ALJ properly accorded greater weight to the opinions of

13  examining psychiatrists Linda Ford, M.D., and Linda Williams, M.D. *Id.* The ALJ noted that

14  Dr. Ford found that plaintiff "could perform simple and repetitive tasks as well as more detailed

15  and complex tasks. He interacted well during the examination and there was no history of

16  problems in this area." AR 28. The ALJ also noted that Dr. Williams found that plaintiff's

17  "social functioning appeared to be good according to his performance during the interview and

18  based on the level of his daily activities. The [plaintiff's] concentration and pace were within

19  normal limits as well." *Id.* An ALJ may properly accord less weight to opinions from "other

20  sources" than to opinions from acceptable medical sources. *See Gomez v. Chater*, 74 F.3d

21  967, 970 (9th Cir. 1996). The ALJ's decision to discount Ms. Smith's opinion was proper.

22  / / /

01      C.      Residual Functional Capacity

02      "RFC is an assessment of an individual's ability to do sustained work-related physical

03  and mental activities in a work setting on a regular and continuing basis.   A 'regular and

04  continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

05  SSR 96-8p at 1.   The RFC assessment must be based on all of the relevant evidence in the case

06  record, such as: medical history; the effects of treatment, including limitations or restrictions

07  imposed by the mechanics of treatment (e.g., side effects of medication); reports of daily

08  activities; lay activities; recorded observations; medical source statements; effects of

09  symptoms, including pain, that are reasonably attributed to a medically determinable

10  impairment; evidence from work attempts; need for structured living environment; and work

11  evaluations.   SSR 96.8p.

12      Here, the ALJ found that plaintiff has the RFC to perform all levels of physical activity

13  and can adequately perform the mental activities generally required by competitive,

14  remunerative, unskilled work.   AR 24.   The ALJ determined that "[h]e can understand,

15  remember, and carry out simple instructions; make judgments commensurate with the functions

16  of unskilled work, i.e., simple work-related decisions; respond appropriately to supervisors,

17  coworkers, and usual work situations; and can deal with changes in a routine work setting."

18  AR 24.

19      Because this case is being remanded for the reasons indicated above, the Court eschews

20  a detailed analysis of the ALJ's RFC assessment.   In light of the fact that the Court has found

21  that the ALJ failed to properly evaluate the lay testimony of plaintiff's mother, father, and

22  girlfriend, and the opinions of Dr. Morris, the ALJ's RFC determination – which failed to

01 account for lay testimony and Dr. Morris's opinion regarding how plaintiff's impairments

02 affect his ability to work – is also reversed and the issue remanded. *See Stout*, 454 F.3d at 1056

03 (finding that the ALJ's failure to properly evaluate lay witness testimony was not harmless

04 because the RFC determination and the VE's response to a hypothetical failed to include lay

05 testimony about the plaintiff's limitations). After reevaluating the lay testimony and Dr.

06 Morris's opinion, the ALJ will be in a better position to evaluate the plaintiff's RFC.

07 Plaintiff also disputes the ALJ's finding that his two unsuccessful work attempts support the

08 conclusion that plaintiff can perform sustained full-time work on a continuing basis. Dkt. 14 at

09 16-17 (citing AR 23). Although the ALJ found that plaintiff's post onset work activity did not

10 constitute "substantial gainful activity," he did find that such activity "confirms the claimant's

11 ability to work." AR 23. The ALJ noted:

12       Although he only performed the job of delivery driver part-time, 20-25 hours
      per week, he managed to perform the job tasks for two to three months. He
13       drove a truck and delivered tea to espresso stands and restaurants. The
      claimant testified that this involved handling 30 to 40 pounds of bottled tea with
14       the use of a hand truck. He also worked at house painting for a few days.
      While none of the claimant's post onset work rises to the level of substantial
15       gainful activity, it does indicate that the claimant would be capable of the
      unskilled work level, as set out in the residual functional capacity above.

16

17 AR 27. The ALJ incorrectly states that "the delivery job ended because he got into an accident

18 trying to park the truck and not due to his alleged impairments." AR 27. Contrary to the

19 ALJ's assertion, plaintiff testified that the accident occurred because he was "having a

20 depressive episode" and that his spatial and mental judgments were affected. AR 948.

21 Plaintiff also testified that he had a job as a housepainter for four days, but that his employer

22 was dissatisfied with the pace and quality of his work. AR 927-28.

01    The Court agrees with plaintiff that the ALJ improperly concluded that plaintiff's post

02    onset work activity confirms his ability to perform sustained full-time work on a continuing

03    basis.    As the Ninth Circuit explained in *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690,

04    693 (9th Cir. 1999), "[a] finding that a claimant is able to engage in substantial gainful activity

05    requires more than a simple determination that the claimant can find employment and that he

06    can physically perform certain jobs; it also requires a determination that the claimant can hold

07    whatever job he finds for a significant period of time."    "Indeed, the SSA considers jobs that

08    end within three months because of the claimant's impairments to be 'unsuccessful work

09    attempts,' and does not consider such short term jobs as evidence of an ability to engage in

10    substantial gainful activity."    *Id.* at 694 (citing SSR 84-25).    On remand, the ALJ should also

11    reevaluate plaintiff's post onset work activity when assessing his RFC.[2]

12

13        2 Plaintiff also argues that his part-time school attendance does not support the ALJ's conclusion that he
      has the RFC to perform sustained full-time work on a continuing basis.  Dkt. 14 at 16-17.   In assessing RFC, the
      ALJ found plaintiff's tesimony regarding his limitations not entirely credible, noting:

14

15        The claimant testified that he may go for a week without socializing with anyone and socializes
      on occasion.   Yet, he testified that he got a job in 2006 by socializing with folks who hung out a
      tea place (chia [sic] house).   The claimant further alleged memory problems when suffering
      from stress and that he is not always able to use the computer due to his bipolar, but he testified

16    that he attended a community college a year ago taking office training and computer courses.
      These activities would have involved some level of interaction with others, and college classes

17    would involve some level of concentration on the computer.   Indeed, the claimant testified that
      he continues to work on his AA (associates in arts) degree by taking a small load and signs up for
      things that interest him.   He takes a general course instead of a focused course because he is

18    unable to follow through with anything.   Yet, the record shows that while the claimant alleged
      that he struggled with his studies, he managed to achieve some A's in the fall of 2002.   College

19    transcripts show that the claimant had a cumulative grade point average of 3.0, and he is within
      three credits from earning his AA degree.   The claimant's level of activity supports an adequate

20    ability to interact with others and an adequate level of concentration persistence and pace to
      complete college courses and achieve grades good enough to earn a significant number of
      college credits within the alleged period of disability.   Therefore, the claimant's actual level of

21    functioning is more than consistent with the current residual functional capacity for unskilled
      work.

22

AR 26-27.   The fact that   plaintiff attended community college is relevant to a determination of his credibility

01        D.        Step Five Analysis

02        In posing a hypothetical to a vocational expert, the ALJ must accurately reflect all of the

03 claimant's limitations.   *Embrey*, 849 F.2d at 422-24.   In order for the vocational expert's

04 testimony to constitute substantial evidence, the hypothetical posed must "consider all of the

05 claimant's limitations."   *Andrews*, 53 F.3d at 1044.   The ALJ is not required to include

06 limitations for which there is no evidence.   *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th

07 Cir. 2001).

08        Here, the hypothetical may be incomplete to the extent that it does not reflect the lay

09 witness testimony or the medical opinion of Dr. Morris that were improperly rejected.   As a

10 result, the questions posed to the vocational expert and his responses are legally deficient and of

11 no evidentiary value.   *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006).   On

12 remand, the ALJ should properly evaluate the evidence in accordance with appropriate legal

13 standards and incorporate them into a hypothetical to the vocational expert.

14                          V.        CONCLUSION

15        For the foregoing reasons, the Court recommends that the Commissioner's decision be

16 REVERSED and REMANDED for further proceedings not inconsistent with this Report and

17 Recommendation.   In particular, the ALJ should articulate specific findings for rejecting the

18 testimony of the lay witness, reevaluate the medical evidence, give proper weight to the

19 opinions of Dr. Morris, and hear testimony from a VE concerning the full vocational impact of

20 _____

21 with regards to allegations that he is unable to perform unskilled work.   *See Burch v. Barnhart*, 400 F.3d 676, 679
(9th Cir. 2005)(holding that the ALJ is permitted to draw an adverse inference as to the plaintiff's credibility when
the claimant is able to engage in daily activities inconsistent with an alleged impairment).   The ALJ did not err by

22 finding that plaintiff's level of activities were inconsistent with the impairments alleged, thereby making an
adverse credibility finding.

01 all of Plaintiff's impairments based on, among other things, a reassessment of plaintiff's RFC.

02 This testimony shall include answering a hypothetical that takes into account all of plaintiff's

03 limitations.   With this information, the ALJ should then apply all appropriate steps of the

04 sequential evaluation process to determine whether Plaintiff's severe impairments render him

05 disabled for purposes of Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and

06 1381-83f.   A proposed order accompanies this Report and Recommendation.

07          DATED this 15th day of July, 2009.

08                                             s/ Mary Alice Theiler
                                               United States Magistrate Judge

09

10

11

12

13

14

15

16

17

18

19

20

21

22